181 So.2d 659 (1966)
George Thomas BECK, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 5925.
District Court of Appeal of Florida. Second District.
January 5, 1966.
Rehearing Denied January 27, 1966.
Garlon Davis, of Ives & Davis, West Palm Beach, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Marvin U. Mounts, Jr., Sol., Criminal Court of Record, West Palm Beach, and *660 Arden M. Siegendorf, Asst. Atty. Gen., Miami, for appellee.
ALLEN, Chief Judge.
Appellant, defendant below, takes an appeal from judgment and sentence entered pursuant to a jury verdict. Defendant was convicted of robbery and sentenced to ten years in prison.
The case arose out of an armed robbery of a liquor store. The important facts on this appeal will be reviewed later.
We combine the first three of appellant's five points on appeal into one. Restated, appellant's points are:
(1) The search of appellant's automobile without a search warrant, not incidental to his arrest, is an unreasonable search and the articles taken as a result thereof cannot be introduced into evidence.
(2) A pistol is not of itself contraband, nor is it unlawful under the laws of the State of Florida to have a pistol in an automobile.
(3) The trial court erred in giving an instruction to the jury that the unexplained recent possession of the stolen property raised an inference that the appellant had stolen such property.
In response to point (1), Florida has long recognized that evidence seized incident to a reasonable search only, can be introduced into evidence to help establish the guilt of an accused. Generally, a search is reasonable if made on the authority of a search warrant. Two exceptions to this rule are: (a) where the search is incident to a lawful arrest, (b) where a vehicle is searched on probable cause. Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, as incorporated in Section 933.19, Fla.Stats., F.S.A. See also for search and seizure, Reasonable Search and Seizure  an Expanding Enigma in Florida Prosecutions, 8 U.Fla.L.Rev. 288 (1955).
The prerequisite for search of a vehicle, not incidental to an arrest, is the officer's "probable cause" to believe the vehicle contains stolen or illicit merchandise. Cuozzo v. United States, 5th Cir.1963, 325 F.2d 274. Probable cause can be defined as, "where the facts or reasonable inferences deductible therefrom should lead a reasonably prudent and intelligent person to conclude that there is good ground to believe that the law is being [or was] violated." Pearson v. United States, 10th Cir.1945, 150 F.2d 219, 220.
We must examine the record to determine whether the officers who made the search of the automobile had "probable cause" to believe that appellant's automobile was the same car that assisted the robber's "get-away" in order to determine if it contained the articles involved in the robbery.
A middle aged man entered Joseph Rubin's (Randy's) liquor store in Palm Beach. Mr. Barcalow, an employee, was behind the counter. The man asked for a bottle of Old Forester bourbon and a bottle of Smirnoff's Vodka. Mr. Barcalow placed the bottle of Old Forester into a paper bag, put the Vodka into a smaller bag and inserted it into the bag with the bourbon. When Mr. Barcalow looked up, the man pointed a silver or nickel plated revolver at him and told him to empty the cash register and his pockets. Meanwhile, Joseph Rubin, the owner of the store, entered. The man told Mr. Rubin to get behind the counter and empty his pockets. All the money, about $600.00, was put into the bag with the liquor. Almost as soon as the robber left the store, Mr. Rubin told Mr. Barcalow to call the police, ran outside and saw the robber jump into a tan Lincoln Continental. As Mr. Rubin ran after the car to determine its direction of flight, he yelled, "Stop that car, stop that car, there's been a hold-up, * * *" to arouse attention. The tan car went up Royal Palm Way east and turned right just before it hit the ocean. As the car was turning east, its lights were turned on and *661 Mr. Rubin observed that the right rear tail light cover was broken and that it emitted a white light, while the left rear tail light, intact, was red. Officer Kirchbaum, who happened to be two stores away from the scene of the robbery, heard Mr. Rubin's shouts, and went to the liquor store. Mr. Rubin told this officer that a tan car with a broken right tail light was the robber's "get-away" car.
Two bystanders, who were also very near the scene of the robbery, followed the getaway car in their car and saw it turn into the Palm Beach Athletic Club parking lot several blocks away. The two men returned to the liquor store, picked up Officer Kirchbaum, took him to the Athletic Club and pointed out to the officer the car they followed. Meanwhile, Sergeant Nelson, who was at the police station, overheard a radio call that there was a hold-up at Randy's Liquor Store.
On information received, the sergeant headed for the Athletic Club to look for a tan Lincoln Continental. When the sergeant arrived, he was told by Officer Kirchbaum that a tan car with a broken tail light was in the parking lot. At that point, Sergeant Nelson was looking for a tan Lincoln Continental with a broken right tail light. A car of this description was pointed out to Sergeant Nelson. He flashed his light through its open window and noticed a nickel plated revolver on the front seat and a paper sack on the floor of the passenger's side. Sergeant Nelson opened the door on the passenger side, took out the paper bag, looked inside and saw two bottles of liquor and money. Mr. Rubin verified the money and bottles as those taken in the robbery. The sack was put on the front seat with the gun. Sergeant Nelson stayed with the car while Officer Kirchbaum went inside the Club to find its owner, who had just driven in.
After the owner was pointed out as being one Mr. Beck, Officer Kirchbaum took him outside and arrested him. Mr. Rubin positively identified Beck as the robber. After the arrest, the car, pistol and sack with it contents were impounded.
The automobile was continuously pursued from the time of the robbery until the time of the contested search, approximately twenty to twenty-five minutes later. Sergeant Nelson, immediately before his search of the automobile, knew that the robber had driven a tan Lincoln Continental with a broken right tail light. Sergeant Nelson's knowledge and the discovery of the car's location after its continuous pursuit gave the sergeant probable cause to believe that the automobile pointed out to him in the parking lot of the Athletic Club, bearing the above described characteristics, was the same one driven by the robber and contained the stolen money and liquor.
It matters not that the owner was not present at the time of the search. See, Ellis v. State, 1926, 92 Fla. 275, 109 So. 622; Armada v. United States, 5th Cir.1963, 319 F.2d 793.
In Miller v. State, Fla.App. 1962, 137 So.2d 21, we said the officer had to procure a search warrant to look through the contents of the car because the vehicle was wrecked, impounded and in no danger of being spirited away. Here the car was in no way impounded and its owner could have driven it away before Sergeant Nelson could have obtained a search warrant. See, United States v. Walker, 4th Cir.1962, 307 F.2d 250, 252; Armada v. United States, supra.
The case authority cited by appellant, discussed below, is not relevant to the facts here presented. In Ippolito v. State, Fla. 1955, 80 So.2d 332, the manner in which the search was conducted was unreasonable where the officer jumped upon the defendants and then seized the articles that they knocked from the defendants' possession. In the instant case the manner of the search was not unreasonable.
In Kreamer v. State, Fla. 1952, 60 So.2d 615, an officer was informed that two unidentified *662 cars had been meeting each other at night. One night the officer attempted to stop these cars but both drove away. Later on, the officer saw a car and "took a chance" that the unidentified car he saw was the same car that he intended to apprehend earlier. The search, following apprehension, where the officer had little more than no reason to believe that this car was the car he intended to stop earlier, was unreasonable. Here the identification of Beck's car, before it was searched, as the same car involved in the robbery was close to absolute.
In Cameron v. State, Fla. 1959, 112 So.2d 864, the search and seizure of the appellant's car was made after a valid initial arrest of the defendant and at a time when the defendant was known to be a fugitive from justice and was being held on charges of auto theft and grand larceny in Wisconsin. The search was held to be reasonable.
Other cases relied upon by appellant concerning a search incidental to an arrest are not discussed.
We find from all the facts and circumstances that Sergeant Nelson had the requisite "probable cause" to search Beck's automobile and that the trial judge properly denied the appellant's motion to suppress as evidence the articles found in the search.
We need not discuss appellant's point (2) on appeal because we believe that Sergeant Nelson had "probable cause" to search the automobile before he saw the pistol on the seat.
Appellant's point (3) that the trial court erred in giving an instruction to the jury that the unexplained recent possession of the stolen property raised an inference that the appellant had stolen such property is unmeritorious. Appellant contended "that the court considered that the defendant was found in the `exclusive possession' of the personal property described in the information." But the instruction was "Therefore, if you find from the evidence, that the defendant was found in the exclusive possession of the personal property described in the information, you may infer from this fact that the defendant stole the property. * * *"
We find from a consideration of this instruction alone and within its context of the other given instructions, that it was proper.
Affirmed.
SMITH, SHERMAN N., Jr., and ANDREWS, CHARLES O., Jr., Associate Judges, concur.