PIERCE, Judge.
Appellant Juan Monroe Church appeals to this Court from a judgment and sentence entered against him by the Pinellas County Circuit Court.
On September 26, 1969, Church, together with three codefendants (one of whom, Richard L. Long, has separately appealed to this Court in Long v. State, Fla.App., 244 So.2d 506), were informed against, charged jointly with armed robbery of one Mary Chapman on September 19, 1969. Only one question is urged before this Court for reversal, viz.: whether the search of the automobile in which Church was riding at the time of his arrest, and the seizure of certain incriminating articles therein, was a constitutionally valid search and seizure. Under the circumstances disclosed by the record filed here, we hold that it was valid and therefore affirm.
On September 19, 1969, at about 9:20 A. M., St. Petersburg police officers Schwark and Smith received police radio information that an armed robbery had just taken place at a Colonel Sanders fried chicken dinner place at 2501 9th Street North in that city. Additional information was immediately thereafter radioed that two or more young Negro males were involved, one wearing a green pullover-type shirt who was also described as having a gun, and another Negro youth wearing a sweatshirt with canvas shoes. The officers proceeded to check traffic coming from direction of the scene of the robbery when they observed a late model Ford sedan going southbound on Sixteenth Street in the center lane.
Five Negro males, all appearing to be youthful, were in the car, two in the front seat and three in the back seat. In the middle of the back seat was a Negro male with a green pullover-type shirt. The officers immediately made a U-turn to contin-tie in the same direction as the Ford. Shortly after the officers turned around one or more of the Negroes looked out the rear window of their car, “then changed lanes two or three times in rather an abrupt manner”. The police car was an ordinary marked uniform cruiser and officer *508 Schwark was in uniform. The car was green and white with a red light on top. The Negroes’ car increased speed, the officers did likewise. At this point there was “some movement in the back seat of the car by the three people in the back seat”. It appeared the Negroes “were trying to hide something on the floor or under the back seat”. Probably because of the traffic, the officers disdained from using their siren and merely “tapped the horn to get their attention, motioned the vehicle to stop, which the driver did”. The officers ordered the five Negroes from their vehicle, told them they were under arrest for robbery, and after lining them up outside the car, the officers searched the Negroes’ car.
Office Schwark said: “The back seat was loose; the seat portion was loose from the back seat about four inches. I flipped the back seat over and removed a bag which contained money, some $994.52 in cash, all contained in three paper bags and one plastic bag.” The bags were “Fried Chicken bags”. The officers then found a .22 caliber pistol and a holster, separate from each other, under the front seat of the Negroes’ car. Officer Schwark testified that the reason the Negroes’ car was searched initially was that the two arresting officers were greatly outnumbered, two two to five, and they suspected a weapon under the rear seat of the Negroes’ car.
A few days prior to this occurrence the officers had received information through a police bulletin that a similar model Ford sedan, involving several young Negro males in their early twenties, had been used for other similar crimes in that locality.
Upon transporting the Negroes to jail and making further investigation into the robbery itself, it became conclusive that the five Negroes, including appellant Church, committed the robbery or had been implicated in it. The sole point urged on appeal to this Court is that the search of the Negroes’ automobile was invalid under the Federal Constitution. We hold the search, seizure, and arrest to be valid, and therefore affirm.
The search of the automobile may be justified either because of the existence of probable cause or as an incident to the lawful arrest. The search of a moving vehicle, or one capable of being instantly put into motion, is on a different legal plane than the search of a place such as an office or a shop or a store or even a home. Ever since the Carroll case in 1925, decided by the United States Supreme Court (Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543), the legal distinction between search of a moving automobile and other species of searches has been clearly demarcated.
The term “probable cause” has been so many times defined, discussed, and elaborated upon that it would be an exercise in futility to cover the same ground again. See Street v. State, Fla.App.1970, 239 So. 2d 870; Paula v. State, Fla.App. 1966, 188 So.2d 388; McCain v. State, Fla.App.1963, 151 So.2d 841; Marden v. State, Fla.App. 1967, 203 So.2d 638; Echols v. State, Fla. App. 1967, 201 So.2d 89; Wilson v. State, Fla.App.1967, 198 So.2d 641; Walker v. State, Fla.App.1967, 196 So.2d 8; Martin v. State, Fla.App.1967, 194 So.2d 291; Nelson v. State, Fla.App.1966, 188 So.2d 353; Lowe v. State, Fla.App. 1966, 191 So.2d 303; Bretti v. State, Fla.App.1966, 192 So. 2d 6. Ample probable cause existed for the search here.
The judgment of conviction appealed is therefore—
Affirmed.
HOBSON, C. J., and MANN, J., concur;