288 So.2d 560 (1974)
Lois Jean NOZZA, Appellant,
v.
The STATE of Florida, Appellee.
No. 73-590.
District Court of Appeal of Florida, Third District.
January 15, 1974.
*561 Elizabeth J. DuFresne, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Joel D. Rosenblatt, Asst. Atty. Gen., for appellee.
Before HENDRY and HAVERFIELD, JJ., and MARTIN, HENRY, F., Jr., Associate Judge.
PER CURIAM.
This is an appeal from a judgment and sentence of 16 years for manslaughter and contributing to the delinquency of a child.
On November 13, 1972, appellant's three-year-old child, Dean Nozza, was brought by his father, Michael Nozza, to Variety Children's Hospital. The child was dead, and the cause of death given by the Dade Medical Examiner was "malnutrition". Mr. Nozza was immediately arrested, and his wife, the appellant, was later arrested. Both were charged by information with manslaughter under Section 782.07 Fla. Stat., F.S.A., and contributing to the delinquency of a child, under Sections 828.21 and 39.01(10), Fla. Stat., F.S.A. Appellant was tried separately from her husband. She was found guilty by a jury and sentenced to 15 years in prison for manslaughter and one year for the second count. Subsequently, Mr. Nozza had a directed verdict in his favor entered on the charge of contributing to the delinquency of a child, and a jury acquitted him of the manslaughter charge.
*562 Appellant raises nine points on appeal in her brief. In addition, the record in this cause is voluminous. We have carefully considered the record, all points in the briefs, and arguments of counsel in the light of the controlling principles of law, and have concluded that no reversible error has been demonstrated.
Perhaps appellant's main contention in this appeal is that the cause of death, malnutrition of the child, was never proximately linked with the defendant. Appellant maintains that the child's mother may not be charged with culpable negligence because the evidence did not establish that the malnutrition resulted from the child being starved to death.
It is true that testimony by Dr. Joseph Davis, Dade County Medical Examiner, revealed that he could not determine the exact cause of the malnutrition. However, the doctor also stated that the child's malnutrition "in this particular instance ... would mean that the child was not gaining enough calories and enough balanced diet in order to live." Further testimony revealed the following facts: Dean Nozza, at death weighed only 19 pounds; the child since approximately Christmas of 1971 was observed to become thinner and thinner; the child was fed, but not persistently by his mother; the child's diet consisted of chocolate milk with a mixture of eggs and crushed vitamins in the milk; while the mother told her sister-in-law that she was upset because the child was not eating well, she did not seek medical attention, stating that her husband would not permit her to take the child to the doctor. From the evidence, the jury undoubtedly reached a conclusion that appellant's neglect of her parental duties had resulted in the malnutrition causing Dean Nozza's death. We believe that the facts presented at trial created a jury issue as to whether or not appellant was guilty beyond a reasonable doubt of culpable negligence. See Gian-Cursio v. State, Fla.App. 1965, 180 So.2d 396.
Appellant has also challenged the trial court's failure to grant a mistrial because evidence was admitted regarding hospitalization of another child of appellant three days after Dean Nozza's funeral. In our view, this evidence was relevant to the question of appellant's negligence in failing to properly care for Dean Nozza. Moreover, appellant did not move for a mistrial during the time this testimony was offered, and we do not think this evidence was sufficiently prejudicial to warrant a mistrial. See Ricks v. State, Fla.App. 1971, 242 So.2d 763.
We also find little merit in appellant's contention that photographs depicting the "filthy condition" of appellant's home should have been suppressed by the trial court. The police officers testified that they went to appellant's home to learn whether Mrs. Nozza's five other children needed medical attention.[1] When he approached the house, an officer testified that he smelled a foul odor emanating from the house. We do not think the officer's observations and subsequent entry into appellant's home was unreasonable. See State v. Parnell, Fla. 1969, 221 So.2d 129; State v. Miller, Fla.App. 1972, 267 So.2d 352.
Appellant next argues that the trial court should have granted her jury instructions respecting the lack of a legal duty of a parent to take a child to a doctor, and as support for this proposition cites Bradley v. State, Fla. 1920, 79 Fla. 651, 84 So. 677; Neveils v. State, Fla.App. 1962, 145 So.2d 883; and Theus v. State, Fla.App. 1972, 265 So.2d 407. *563 In our view, the court was correct in denying these instructions. Two of the cited cases were decided prior to Section 828.04, Fla. Stat., F.S.A., which makes it a misdemeanor to wilfully deny treatment to a child. The third case did not involve a situation wherein the parent had neglected to take her child to a doctor; in fact, the mother had taken her child to the doctor on numerous occasions in that case.
Appellant's next point is that she was denied equal protection of the law and discriminated against as the mother of the child. Appellant points out that following her trial, a directed verdict of acquittal was entered by the trial court for her husband, and a jury acquitted him of count two. Therefore, she concludes a different standard was applied to her, based on her stereotyped role as mother of the child. This is without substantial merit. Both husband and wife were tried separately in jury trials. The fact that one jury convicted and another acquitted does not result in a conclusion that appellant has been denied equal protection of law.
There is also no substantial merit to appellant's argument that she was denied a fair trial because count one and two of the information were tried together. Joinder of separate offenses is permitted by CrPR 3.150(a), 33 F.S.A., when the offenses "are based on the same act or transaction or on two or more connected acts or transactions." The acts or transactions charged in the information were connected together within the meaning of the rule. See Moore v. State, Fla.App. 1972, 259 So.2d 179; Hughes v. State, Fla.App. 1958, 103 So.2d 207.
Finally, appellant argues the sentence imposed, being the maximum possible sentence, was excessive. We think the sentence being within the limits prescribed by statute was within the province of the trial court, and may not be challenged herein as excessive. See Cole v. State, Fla.App. 1972, 262 So.2d 902.
Therefore, for the reasons stated and upon the authorities cited, the judgment and sentence appealed is affirmed.
Affirmed.
HENDRY, Judge (dissenting in part; concurring in part).
I dissent in part because I do not think the state has sufficiently proven that appellant was guilty of manslaughter beyond and to the exclusion of every reasonable doubt.
It is axiomatic that in a criminal case when the state relies upon circumstantial evidence, the proof must be more than consistent with the defendant's guilt; it must also be inconsistent with any reasonable hypothesis of innocence. Lyons v. State, Fla. 1950, 47 So.2d 541; Davis v. State, Fla. 1956, 90 So.2d 629; Driggers v. State, Fla. 1964, 164 So.2d 200; Gilbert v. State, Fla.App. 1972, 270 So.2d 750.
Measured by this standard, I do not believe that the state has established a prima facie case of manslaughter against the appellant because a causal connection between appellant's alleged criminal conduct and the death of her child, Dean Nozza, has not been satisfactorily demonstrated. Therefore, I think our holding conflicts with Theus v. State, Fla.App. 1972, 265 So.2d 407.
As the majority points out, the defendant in the Theus case did take her child to see two doctors, however, she ceased doing so approximately a month prior to the child's death because she felt they were doing nothing for it. In the cause sub judice, appellant allegedly did not take her child to a doctor. However, I cannot see that this factor alone distinguishes this case from Theus.
*564 Testimony adduced at trial from Dr. Joseph Davis, the Dade Medical Examiner, revealed that his autopsy of Dean Nozza determined evidence of organic heart disease which may cause loss of appetite. The doctor also testified that mental retardation in rare cases will cause a loss of appetite. The evidence indicated that Dean Nozza in his three years of life did not talk and possessed some degree of mental retardation. At the conclusion of his testimony, Dr. Davis acknowledged that he could not say why the malnutrition was manifested in the dead child.
A nurse's aide at Variety Children's Hospital then testified that on the night appellant's husband brought his son to the hospital, Mr. Nozza stated that he was ashamed and embarrassed about the condition of his son and that his wife had "begged" him to let her take the child to a doctor. Asked if she were positive Mr. Nozza used the word "begged", the witness replied that she was positive.
Admittedly, Dean Nozza was seen to become thinner after Christmas of 1971 until he died on November 13, 1972. However, based particularly on Dr. Davis' testimony, I fail to see that the state proved that the culpable negligence of appellant caused Dean Nozza's death instead of an alternative hypothesis that the child's death due to malnutrition may have resulted from loss of appetite because of an organic heart disease or possibly mental retardation. As the First District Court of Appeal found in Theus, the evidence in this case does not point "directly and unerringly to the appellant's guilt beyond a reasonable doubt."
Therefore, I would reverse the judgment and sentence of fifteen years imprisonment for manslaughter. I would affirm the conviction against the appellant and the sentence of one year in jail for contributing to the delinquency of her minor children.
NOTES
[1] Appellant maintains she telephoned a detective at the hospital and informed him that she had taken the children to her mother's house; therefore, there was no need to dispatch officers to check up on her children. However, from our examination of the record it appears that appellant's telephone call had been placed after the officers had been sent to appellant's home.