311 So.2d 742 (1975)
Martin Michael PIANTADOSI, Appellant,
v.
The STATE of Florida, Appellee.
No. 74-935.
District Court of Appeal of Florida, Third District.
April 8, 1975.
Rehearing Denied May 13, 1975.
Sheldon Yavitz, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Joel D. Rosenblatt, Asst. Atty. Gen., for appellee.
Before PEARSON, HENDRY and HAVERFIELD, JJ.
*743 PER CURIAM.
At 5 o'clock in the morning on January 17, 1974, officer Ronald Kryda of the North Miami Beach Police Department spotted the defendant-appellant Martin Piantadosi, running from the second floor of an apartment building.
The officer testified that he saw Piantadosi carrying several suitcases as he ran and that he was dropping things from these bags.
Then, officer Kryda saw the appellant run to a green MG automobile (which was parked in the apartment parking lot in a "peculiar" manner indicating a quick getaway was contemplated) and hurriedly toss the bags in through the window.
The officer decided that he should investigate because, in his words, "I had probaable cause to believe that something was going on, when somebody is running down the stairway at five o'clock in the morning."
Kryda drove his police car in front of the MG, got out and asked Piantadosi and his companion who was driving the MG, one James Porreca, for identification and what they were doing.
The officer testified that Piantadosi told him he had just come from his girl friend's apartment where he had picked up some tennis equipment, and he was going to play tennis.
The police officer felt this explanation was "rather peculiar" and he decided to investigate further.
So, Kryda requested Piantadosi to take him to his girl friend's apartment. The officer stated that the appellant took him to the second floor and after some hesitation pointed to apartment number 224.
The officer knocked and a woman answered who had been awakened and who was annoyed that she had been disturbed and who denied knowing Piantadosi.
Then, Kryda was informed by a backup officer who had just arrived on the scene that a breaking and entering in progress had just been reported over their police radio. The location of the break in was reported as being at apartment number 225.
The police officers went next door, and they learned that the victim had just reported a break in, and that he had seen the burglar hurriedly leaving his apartment. The victim had not seen the culprit's face, but he told Kryda he was wearing a brown coat, and he was tall, thin and had dark hair.
Piantadosi was wearing a brown coat, and Kryda advised the appellant that he was under arrest. Thereafter, the officer and the victim walked downstairs to identify the stolen items.
Along the way, the victim was pointing out to the officer such items as tennis balls, sweat pants, a wristband and a headband which he stated belonged to him. He also identified a tennis bag in the MG as belonging to him.
Piantadosi and Porreca both testified offering their versions of what happened. They said they were playing chess at the appellant's apartment, when Piantadosi received a phone call from a girl friend at 4:30 A.M.
The appellant testified that he and Porreca drove to the girl's apartment because he (the appellant) wanted to have sexual intercourse with her.
Piantadosi stated that when he got on the second floor he suddenly realized that he had forgotten to ask his girl friend (who had moved there about a month and a half earlier) which apartment she lived in.
He decided to return to the car, drive home and call her up to find out. Then, on his way back the appellant discovered the various tennis items on the ground and he made up his mind to take that which he needed.
Piantadosi's girl friend then testified as a state's rebuttal witness. She denied ever calling him at such an early hour in the *744 morning or ever having sexual intercourse with him.
Following a hearing on the appellant's motion to suppress evidence and a non-jury trial, the trial court found the appellant guilty of the crimes of breaking and entering with intent to commit a misdemeanor, to-wit: petit larceny, and petit larceny and sentenced him to serve a total of four years imprisonment.
On appeal, the defendant raises two points for reversal. First, appellant asserts that the evidence against him was uncovered in this case following an unreasonable and unbridled detention and an illegal arrest without probably cause, and therefore the trial court should have granted his motion to suppress.
Next, appellant argues that the court should have granted his motion for a judgment of acquittal because the circumstantial evidence against him was insufficient to support a conviction.
In our view, neither point contains substantial merit, and accordingly the judgment is affirmed.
The state has presented two procedural obstacles to our consideration of the appellant's contention that the evidence against him was illegally seized in this case. The state contends that the appellant did not object to the introduction of the evidence during the actual trial nor does he have the requisite standing to contest an alleged illegal search herein.
We do not deem it necessary to consider these procedural objections, however, because in our opinion, the appellant totally has failed to demonstrate that the police officers in this case acted unreasonably or in excess of their authority and violated his Fourth Amendment constitutional rights.
As the Supreme Court of the United States stated in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612, (1972):
"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry [Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] recognizes that it may be the essence of good police work to adopt an intermediate response. (citation omitted) A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. (citations omitted.)
We think the detention of Piantadosi under the facts in this record was entirely reasonable and consistent with good police work. The Florida "stop and frisk law" also justifies a temporary detention in just such a situation presented in this case. See, Fla. Stat. § 901.151(2), (6); see also, State v. Miller, Fla.App. 1972, 267 So.2d 352; Donar v. State, Fla.App. 1970, 236 So.2d 145; State v. Outten, Fla. 1968, 206 So.2d 392.
Turning to the appellant's second point on appeal, it is urged that the state's proof did not exclude a reasonable hypothesis of innocence which is legally required in a case resting upon circumstantial evidence. Davis v. State, Fla. 1956, 90 So.2d 629; Hall v. State, Fla.App. 1971, 248 So.2d 524.
In short, appellant contends that his conviction is founded upon conjecture and speculation. We do not think so.
On appeal, the test is not whether this court sitting as a trier of fact thinks the evidence excludes every reasonable hypothesis but that of guilt, it is whether the jury  or in this case the trial judge  reasonably concluded that it did. See Duran v. State, Fla.App. 1974, 301 So.2d 486; Amato v. State, Fla.App. 1974, 296 So.2d 609.
There is no question that the testimony sharply conflicted in this case, and if the trial court were obligated to accept *745 Piantadosi's story of what happened, then it could be said that a reasonable hypothesis of innocence was presented.
Unfortunately, we find the defendant's version of the sequence of events hard to believe and obviously the trial court didn't accept it.
Our thorough review of the record reveals that the state's evidence presented an overwhelming case against the appellant, even if some of the evidence was circumstantial.
In sum, the appellant virtually was caught red-handed in possession of property which did not belong to him, and in a relatively short amount of time in which the police detained him, it was learned that circumstances pointed clearly to the fact that Piantadosi had unlawfully entered another's apartment in order to get the property.
Therefore, for the reasons stated in this opinion, the judgment and sentence entered against the appellant are affirmed.
Affirmed.