389 So.2d 991 (1980)
James Leroy PHIPPEN, Appellant,
v.
STATE of Florida, Appellee.
No. 54664.
Supreme Court of Florida.
October 23, 1980.
*992 Louis G. Carres, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Miguel A. Olivella, Jr., Asst. Atty. Gen., Tallahassee, Florida, for appellee.
PER CURIAM.
Appellant James Leroy Phippen was convicted on two counts of first-degree murder. After a jury recommendation of life imprisonment, the trial judge imposed two sentences of death. Jurisdiction vests in this Court pursuant to article V, section 3(b)(1), Florida Constitution. We affirm the convictions but vacate the sentences of death.
At 1:30 a.m. on the morning of October 5, 1977, a deputy sheriff discovered appellant slumped over the steering wheel of his automobile on the side of a road in Camden County, Georgia. Appellant was carrying a pistol in the waistband of his pants at the time. He was arrested, advised of his Miranda rights, and charged with driving while intoxicated and carrying a concealed weapon. At 11:00 a.m. the following morning, appellant appeared before Judge David M. Proctor and pleaded guilty to the drunken driving charge. After sentencing, appellant hesitated and asked to speak privately with the judge. When the room was cleared he confessed to having killed his mother and stepfather, James Corey and Mary Corey, in Putnam County, Florida. Judge Proctor immediately summoned the sheriff, who advised appellant of his Miranda rights. Appellant reiterated his story to the sheriff, explaining that a heated argument had erupted when he visited his parents' home on the evening of October 4, and after his stepfather drew a knife, he was forced to shoot both his stepfather and mother.
Two days prior to his arrest in Georgia, while en route from Maryland to Crescent City, Florida, appellant picked up a hitchhiker in Virginia named Gary Martin. Phippen and Martin drove to Florence, South Carolina, where they spent the evening of October 3. Appellant consumed a considerable amount of alcohol during the two-day journey to Florida. On October 4 the pair stopped in Jacksonville, Florida, so that appellant could call his mother and Martin could arrange for his parents to pick him up in Palatka. Appellant returned visibly upset from the telephone call with his mother. Martin testified that appellant told him "that he was going to kill his mother and stepfather." He later repeated the threat at least three or four times. After leaving Jacksonville, appellant and Martin drove to Shell Harbor to the house of James Smith, a friend of appellant. Appellant borrowed Smith's .38 caliber target pistol and some ammunition for the alleged purpose of using it in a target match in Orlando the next day. The two left Smith's house shortly thereafter and arrived at appellant's home in Crescent City in the early evening. After Martin showered, appellant drove him to the Palatka bus station where Martin met his parents and proceeded with them to Tampa.
*993 Glenn Phippen, appellant's sixteen-year-old son, testified that on October 4 he accompanied his father to the post office to check on a money order appellant had been expecting. On the way back from the post office, appellant told Glenn that he was upset with Glenn's grandmother and that he would like to kill her. Glenn disregarded the threat because his father was drunk, and he sometimes said things when drunk that he did not mean.
Dr. Schwartz, county medical examiner, performed autopsies on the victims. Mary Corey had been shot four times, James Corey, six times. Some of the bullets entered the victims' bodies through the left flank and back. A lab analysis verified that the bullets recovered from the bodies had been fired from the gun seized from appellant in Georgia. That gun, capable of holding five bullets, was the same .38 caliber pistol appellant had borrowed from James Smith.
After the state rested, appellant took the stand and recounted his version of the events of October 4. He stated that he went to his parents' home that evening at his mother's request. Upon arriving, his stepfather angrily demanded that appellant pay a sixty-four-dollar bill that appellant had charged to his parents' credit card account. Mr. Corey grew even more belligerent when appellant told him that he did not have the money. Appellant testified that Corey unsheathed a hunting knife and came after him with it; appellant, partially crippled, retreated but fell. When Corey was upon him, appellant drew his pistol, but before he could fire, Mrs. Corey stepped in front of her husband and was cut down by the fusillade. Mr. Corey, though wounded, continued his pursuit of appellant. Appellant explained that his stepfather's persistent menacing advance forced him to quickly reload the revolver and discharge five more bullets into the body. When asked why he did not seek medical assistance for his mortally wounded parents, appellant explained that he was confused.
On May 12, 1978, a jury convicted appellant of first-degree murder of James and Mary Corey. During the sentencing phase of the trial the jury recommended life imprisonment. The trial judge, however, finding two aggravating circumstances and no mitigating circumstances, overrode the jury's recommendation and sentenced appellant to death.
Appellant challenges his convictions and sentences on four grounds. He first contends that there was insufficient evidence to establish the premeditation necessary to a conviction for first-degree murder. He proceeds by citing Mayo v. State, 71 So.2d 899 (Fla. 1954), for the proposition that circumstantial evidence will not sustain a conviction unless it is inconsistent with any reasonable hypothesis of innocence. Accord, Davis v. State, 90 So.2d 629 (Fla. 1956). In applying the standard, the version of events related by the defense must be believed if the circumstances do not show that version to be false. Mayo v. State, Holton v. State, 87 Fla. 65, 99 So. 244 (1924).
Although the case against appellant is wholly circumstantial, we are satisfied that the evidence proves appellant's guilt beyond a reasonable doubt. In Spinkellink v. State, 313 So.2d 666 (Fla. 1975), this Court held that premeditation, like other factual circumstances, may be proven by circumstantial evidence. Among the circumstances from which premeditation may be inferred are such matters as (1) previous difficulties between the parties, (2) the manner in which the homicide was committed, and (3) the nature and manner of the wounds inflicted. Id. at 670 (quoting from Larry v. State, 104 So.2d 352, 354 (Fla. 1958)). In this case we have uncontroverted testimony that within forty-eight hours of the killings, appellant repeated at least four or five times that he was going to or would like to kill his parents. There is evidence that shortly after a heated telephone call with his mother, appellant borrowed a pistol which he took with him to his parents' home and which, indeed, was later to become the instrument of death. The evidence at the scene of the crime reveals that Mr. Corey was shot six times and Mrs. Corey four times, even though appellant claims to have shot his mother accidentally. *994 Such a barrage, of course, required appellant to reload his pistol, leaving one to wonder how a partially crippled man could hold a supposedly vigorous attacker at bay with one hand, and deftly reload his weapon with the other. Moreover, medical testimony demonstrates that some of the bullets entered the victims' bodies from the back. Taken as a whole, the evidence was more than sufficient to establish that appellant murdered his parents with premeditated design. In light of his threatening statements and actions before the crime, and the manner in which the Coreys were killed, appellant's plea of self-defense simply proves too much.
Appellant next maintains that the trial judge misinstructed the jury on manslaughter, thereby fundamentally prejudicing his right to a fair trial. The record disclosed no such error. The judge gave the jury standard instructions which accurately and comprehensively reflected the law of manslaughter. Similarly unavailing is appellant's argument that he was entitled to an instruction on an unnecessary killing to prevent an unlawful act under section 782.11, Florida Statutes (1977). The exact argument was considered but rejected by this Court in State v. Carrizales, 356 So.2d 274 (Fla. 1978).
With regard to the sentencing phase of the trial, appellant's contention that a sentence of death imposed by a trial court after a jury recommendation of life constitutes double jeopardy was recently put to rest in Douglas v. State, 373 So.2d 895 (Fla. 1979).
We are less sanguine, however, about the actual sentences imposed by the trial court in this case. The guiding principle which the trial judges of this state are bound to follow is found in Tedder v. State, 322 So.2d 908 (Fla. 1975), where we held that the facts suggesting a sentence of death over a jury recommendation of life "should be so clear and convincing that virtually no reasonable person could differ." Id. at 910. Here the Court found two aggravating circumstances applicable to appellant, that the murders were committed for pecuniary gain,[1] and that the murders were especially heinous, atrocious, or cruel.[2] In view of the well-known fact that aggravating circumstances must be proven beyond a reasonable doubt,[3] the finding that the murders were committed for pecuniary gain is patently erroneous. There was evidence that the argument between appellant and Mr. Corey was precipitated by the sixty-four-dollar credit card charge, but there was absolutely no evidence indicating that appellant murdered his parents in order to relieve himself of that debt. Even assuming the propriety of the finding that the murders were especially heinous, atrocious, or cruel, a question not without some doubt, the facts suggesting a sentence of death in this case were not so compelling as to justify overriding the jury's recommendation of life imprisonment.
Accordingly, the convictions of murder in the first-degree are affirmed, the sentences of death are vacated, and this cause is remanded to the trial court for imposition of a sentence of life imprisonment without eligibility for parole until the expiration of twenty-five years.
It is so ordered.
SUNDBERG, C.J., and OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
ADKINS, J., concurs in part and dissents in part with an opinion, with which BOYD, J., concurs.
ADKINS, Justice, concurring in part, dissenting in part.
I concur in that part of the decision which affirms the conviction of the defendant. I dissent from that part of the decision which vacates the sentence of death and remands it to the trial court for resentencing.
*995 Tedder v. State, 322 So.2d 908 (Fla. 1975), does not require that the judge consider additional evidence in overriding the jury nor entertain any circumstances which were not considered by the jury. If the facts suggesting a sentence of death are so clear and convincing that virtually no reasonable person could differ, then the judge should override the jury recommendation of life imprisonment.
The defendant executed his natural mother and stepfather while they were in the confines of their own home. I think it clearly appears from the evidence that the victims fell to the floor when they were first shot by the defendant. As the elderly couple lay on the floor of their living room, bleeding from wounds, defendant stood over them, firing time and time again at their backside until the cylinder of the pistol was empty. He then opened the cylinder, reached into his pocket for more ammunition and emptied the cylinder again into the bodies until he heard the click of an empty cylinder. He left their bodies riddled with bullet holes resembling pieces of swiss cheese. If he had called an ambulance, he might have saved their lives. This was a grotesque and unnecessary elimination of two human beings. Certainly these facts suggest a sentence of death and they are so clear and convincing that virtually no reasonable person could differ. Following the pronouncement of this Court in Tedder v. State, supra, I would affirm the imposition of the death sentence.
In several other cases we have affirmed the death sentence where the trial judge rejected the jury recommendation and sentenced the defendant to death. See Barclay v. State, 343 So.2d 1266 (Fla. 1977); Hoy v. State, 353 So.2d 826 (Fla. 1977); Dobbert v. State, 328 So.2d 433 (Fla. 1976); Douglas v. State, 328 So.2d 18 (Fla. 1976); Sawyer v. State, 313 So.2d 680 (Fla. 1975); Gardner v. State, 313 So.2d 675 (Fla. 1975).
BOYD, J., concurs.
NOTES
[1] § 921.141(5)(f), Fla. Stat. (1977).
[2] § 921.141(5)(h), Fla. Stat. (1977).
[3] State v. Dixon, 283 So.2d 1, 9 (Fla. 1973).