## STATE of FLORIDA v. LAW, et al.
### Case No. 82-13712 A&B
Seventeenth Judicial Circuit, Broward County
May 12, 1983

Howard L. Visnick, for defendants.

John Howes, for plaintiff.

J. LEONARD FLEET, Circuit Judge.

## CHARGE

In a single Information, Joseph Lewis Law (hereinafter referred to a Law) and Evelyn Louise Cornelius (hereinafter referred to as Cornelius) have each been charged with the commission of several felonies, all alleged to have occurred on December 30, 1982. Defendant Law is accused of (1) possession of more than 20 grams of cannabis with the intent to sell and carrying a firearm during the commission of such crime, (2) carrying a concealed firearm, and (3) possession of more than 20 grams of cannabis. Defendant Cornelius is charged with two counts of possessing more than 20 grams of cannabis.

## FACTS

On December 30, 1982, upon returning from his vacation, Ft. Lauderdale Police Sergeant George Hurt was informed by fellow Officer Ronald Range that undercover Officer Shaw was to receive delivery from Defendant Law of approximately twenty pounds of cannabis on that

date at a specified time and at a specified location. Upon receipt of this information, Sgt. Hurt took charge of the covert operation and surveillance. Officer Desiree Shirley was detailed to observe the residence of Defendant Law and to transmit, via radio, his activities in order that her fellow officers could constantly monitor Defendant Law's activities as he loaded the suspected contraband into his vehicle and transported it to the planned destination.

As received by Sgt. Hurt, Officer Shirley broadcast that a black male (later identified as Defendant Law) was seen, at about 6:30 A.M., to exit the residence (located at 1008 N.W. 11th Court, Ft. Lauderdale, and previously determined to be that of Defendant Law) carrying a large grey plastic bag. Defendant Law was seen to place the plastic bag inside a white Chevrolet van parked in front of the aforesaid residence and to then return to, and enter, the residence. A few minutes later, Defendant Law and a black female (later identified as Defendant Cornelius) exited the residence jointly carrying a box which was placed inside the abovedescribed Chevrolet van. Both Defendants entered the subject van, with Defendant Law driving, and departed the area.

All of the foregoing information, as well as physical descriptions of the subjects, their clothing, and their vehicle was broadcast by Officer Shirley as she made her observations and, simultaneously, were received and noted by Sgt. Hurt, the latter being in uniform and occupying a marked police unit some distance away from the residence of the Defendants.

When Defendant Law drove away from his residence in the white Chevrolet van, Officer Shirley was ordered by Sgt. Hurt to discontinue her surveillance. Surveillance of the van was, however, continued by another officer in an airplane and Sgt. Hurt received a steady stream of information detailing the route being followed by the suspects. Based upon the information then at his disposal, Sgt. Hurt stopped the van on Sunrise Boulevard before it reached its planned destination, giving as his reason a desire to not then reveal the true identity of undercover Officer Shaw.

Once the van was stopped, Defendant Law exited the van and walked back to Sgt. Hurt, leaving the driver's door of the van open. At this point in time, Officer Marion Sims (who was part of the surveillance team) arrived on the scene, spread Defendant Law against the side of the van and patted him down; it was during his "pat down" search that a handgun was found in a shoulder holster, concealed by the jacket worn by the Defendant.

During the occurrence of the events commencing with the arrival of Officer Sims, Defendant Cornelius was observed to exit the van from the passenger's side. According to Sgt. Hurt, Defendant Cornelius became agitated and noisy, refusing to obey Sgt. Hurt's orders to remain quiet which refusal ultimately resulted in her being arrested at the scene for disorderly conduct.

Breaking away from the confrontation concerning both Defendants, Sgt. Hurt approached the front of the van. From the open driver's door, Sgt. Hurt detected the odor of what he recognized to be unburned, bulk cannabis, said odor emanating from the interior of the van. When he looked through the front windshield, Sgt. Hurt observed a large grey plastic bag on the floor inside the van; the observed plastic bag appeared to match the description, earlier broadcast by Officer Range, of the plastic bag placed in the van by Defendant Law.

Defendants Law and Cornelius were formally arrested and removed from the scene. Sgt. Hurt remained at the arrest location in order to secure the van pending return of a search warrant. Officers Shirley and Range returned to their office where applications for search warrants were prepared. At approximately 10:00 A.M., December 30, 1982, the applications for search warrants for the van and the residence located at 1008 N.W. 11th Court, Ft. Lauderdale, were simultaneously presented to Hon. John Ferris who then issued the search warrants.

Although it is not completely clear from the testimony, it seems — and this Court so finds — that the van was searched first, said search being conducted on Sunrise Boulevard where the vehicle was stopped. After the grey plastic bag was opened and, for the first time, the presence of suspect cannabis therein was confirmed, the search warrant for the house was executed.

By stipulation of counsel for the State and the Defendants, Officer Range was excused from giving sworn testimony in open court pursuant to the timely filed Motions to Suppress. It was agreed, however, that had he been called, Officer Range would have testified that when he and Officer Shirley appeared before Judge Ferris, they gave no testimony other than to swear to the contents of their respective affidavits. By contrast, Officer Shirley testified upon oral examination that in addition to affirming the truth of their affidavits, they told Judge Ferris that the events therein had all occurred within the week prior to December 30, 1982, and, more specifically, that very day. To resolve this apparent conflict, counsel for the State and both accused parties agreed to have this court obtain, *ex parte* and unsworn, testimony from Judge Ferris addressing the issue of what inquiry, if any, was made of Officers Range and Shirley before he issued the two arrest warrants.

Judge Ferris informed this court that his calendar for December 30, 1982, reflects that he was taking testimony in a probation revocation proceeding [which could have been perceived as a trial by Officer Shirley] but he has absolutely no recollection of either executing the subject search warrants or of taking any testimony.

Defendant Cornelius, testifying in her own behalf, informed the court that both defendants contributed money toward the purchase of the van, even though it was titled solely in the name of Defendant Law. Each defendant had separate, duplicate keys to the van. The defendants were married to each other on January 12, 1983, but had lived as, and had held themselves out as, husband and wife since 1973. While maintaining separate savings accounts, the defendants did maintain a joint checking account, as well as joint charge accounts with Visa and Mastercard.

## I

## SUFFICIENCY OF LEGAL RIGHT TO CHALLENGE INITIAL STOP AND SUBSEQUENT SEARCH OF VAN

Since the United States Supreme Court announced its landmark decision of *United States v. Salvucci,* 100 S.Ct. 2547, 448 U.S. 83 (1980), all *nisi prius* courts have been constrained, when asked to resolve questions arising under the Fourth Amendment, to determine the threshold question of "standing", i.e., whether the party seeking the suppression of evidence is recognized in law as being vested with the right to present for judicial analyses a question arising under the Fourth Amendment.

In essence, *United States v. Salvucci, supra,* stands for the proposition that one accused of a possessory crime may claim the benefits of the exclusionary rule only if *one's own* Fourth Amendment rights have been violated, a direct reversal of the rule that formerly prevailed under *Jones v. United States,* 362, U.S. 257, 80 S.Ct. 725 (1960). Before one may be found to have "standing" to challenge a search, therefore, the burden of proof is upon the movant to establish, by an appropriate quantum of evidence, that the complaining party was vested with a legitimate expectation of privacy in the area searched. Absent a legally sufficient showing of such legitimate expectation of privacy, one is not vested with the right to present for judicial analysis a question arising under the Fourth Amendment of the United States Constitution. *U.S. v. Salvucci, supra.*

In Article I, Section 12, Florida embodies the provisions of the Fourth Amendment of the United States Constitution and makes it a part of our organic law. By Amendment in 1982, the rulings of the United States Supreme Court on Fourth Amendment issues are

automatically engrafted into Florida law. Article I, Section 12 (1982), Florida Constitution.

Shortly after the announcement of the decision in *Salvucci, supra,* our own Fourth District Court of Appeal, in a Broward County case, found occasion to apply its strictures. The case of *Inchaustegui v. State,* 392 So.2d 319 (1980), cert. den. 402 So.2d 610 (1981), resulted in a ruling that the mere fact that one may be legitimately on the premises searched, while *relevant* to one's expectation of privacy, *is not determinative* of the issue, citing *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, (1978). Thus, with "automatic standing" no longer available, pursuant to the ruling in *Salvucci, supra,* those persons raising Fourth Amendment and Article I, Section 12, issues must demonstrate the existence of a recognized legal foundation upon which to rest their case.

In the matter now before the court, Defendant Cornelius claimed to be vested of an equitable interest in the van in which she was a passenger, but she offered nothing more to demonstrate that she was vested with "standing" to challenge either the initial stop or the subsequent search of the vehicle. Even more notable was the failure of Defendant Cornelius to even suggest any indicia of ownership, or right of possession, of the grey plastic bag later found to contain the subject cannabis.

Based upon the factual matters developed in the record now before the court, the law as expressed in the cases cited thus far, and upon the authority of *State v. Davis,* 415 So.2d 82 (4DCA, 1982) and the cases listed therein on page 84, the court finds that:

(1)  Defendant Cornelius is without "standing" to challenge the validity of the initial stop of the vehicle in which she was a passenger at approximately 6:30 A.M., December 30, 1982, and her Motion to Suppress is DENIED.

(2)  Defendant Law has "standing" to challenge the initial stop and subsequent search of the van and his Motion to Suppress will be analyzed below.

## II

## THE STOP OF THE VAN

There are few areas of our criminal justice system which require a greater investment of judicial labor, nor a more keen analysis of a myriad of factual situations, than questions arising under the Fourth Amendment of the United States Constitution. In an area of law that seems to teem with activity by skillful trial attorneys [for both the prosecuting authorities and the accused parties], judges at all levels are forced to invest more of their intellectual capacities in order to insure

just and legal resolutions of complex problems. An excellent example of outstanding judicial analyses is found in the specially concurring opinion of Judge Cowart in *State v. Jones,* 417 So.2d 788, 790 (Fla. 5DCA, 1982).

The Fourth Amendment of the United States Constitution [made binding upon the several states by *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed 2d 1081 (1961)] and Article I, Section 12 of Florida's Constitution protect the people of our land from unreasonable searches and seizures. The determination of just what constitutes, in a given situation, an "unreasonable" search or seizure has been the catalyst for court opinions by the score. When viewed as a whole, this plethora of opinions reflects a common denominator of love and respect for the law that brings rationality out of apparent chaos.

Recognizing that even brief investigatory stops of vehicles are seizures protected by law [*Terry v. Ohio,* 392 U.S.1 88 S.Ct. 1868, 20 L.Ed 2d 889 (1968); *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66L.Ed 2d 621(1981)], such a stop is permitted when an officer is in possession of a well founded suspicion of criminal activity. *McClure v. State,* 358 So.2d 1187 (Fla. 2DCA, 1978); *State v. Jones,* 417 So.2d 788 (Fla. 5DCA, 1982). In fact, Florida Statute 901.15 is an express statutory adoption of the principles of *Terry v. Ohio, supra.*

As explained in *State v. Stevens,* 354 So.2d 1244, 1247 (Fla. 4DCA 1978), which is considered one of the leading cases on the subject [see *State v. Pryor,* FLW 7266 (Fla. 4DCA 3/9/83)]

> ". . . Circumstances can 'reasonably indicate' that a person has committed, is committing, or is about to commit" a violation of criminal laws or ordinances without necessarily indicating that high probability of guilt which is implied by the term probable cause. . . . To justify temporary detention, only "founded suspicion" in the mind of the detaining officer is required. . . . A founded suspicion is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge. 'Mere' or 'bare' suspicion, on the other hand, cannot support detention . . . Mere suspicion is no better than guesswork, or hunch, and has no objective justification. . . . (citations omitted)

In a case deemed to be *in pari materia* with *State v. Stevens, supra* (*State v. Pryor, supra*), Justice Alderman wrote the majority opinion which squarely confronted the issue of:

". . . whether information given the police from an apparently anonymous informant under the totality of the circumstances provided a reasonable basis for the stop. . . ." State v. Webb, *infra,* at page 821.

In *State v. Webb,* 398 So.2d 820 (Fla. 1981), a stop was deemed lawful when occasioned by the stopping officer acting in reliance upon information received from a fellow officer, which information contained specific and articulable facts which, taken together with rational inferences therefrom, reasonably justified the stop. To reach this conclusion, the Webb court utilized the famous question posed in *Terry v. Ohio,* 392 U.S. at 21-22, 88 S.Ct. at 1880, viz:

"[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"

The factual analyses of the events leading up to the stop of the van occupied by Defendant Law and Defendant Cornelius leads to the inescapable conclusion that the stop was lawful. Undercover Officer Shaw had made arrangements directly with Defendant Law for the latter to deliver twenty pounds of cannabis to the former at a specified time on a specified date and at a specified place. Officer Shaw conveyed this information to Officer Range who in turn informed Sgt. Hurt. Sgt. Hurt was also made aware of the fact that Officer Shaw had made a direct buy of cannabis from Defendant Law as a prelude to the larger purchase.

Officer Beverly, familiar with the manner in which twenty pound lots of cannabis were packaged, relayed her suspicions to Sgt. Hurt and, in addition thereto, furnished him with a detailed description of the van, its number, the physical appearance of both defendants and a graphic description of their clothing. As if all of the foregoing weren't enough, an officer in an airplane kept the target vehicle under constant surveillance and radioed pertinent information to Sgt. Hurt. In other words, both defendants herein were under constant, uninterrupted police surveillance from the time Defendant Law took the grey plastic bag from the house and placed it in the van until, and including, the time of the stop by Sgt. Hurt.

The argument of defense counsel that Sgt. Hurt was not legally allowed to effect the stop of the van because he had not *personally* made the observations upon which he acted is without merit. In *State v. Keen,* 384, So.2d 284,286 (Fla. 4DCA, 1980), our appellate court said:

". . . The arresting officer need not actually see the law being violated, nor must he satisfy himself beyond any question

that a crime has been committed. . . . The person making the arrest may either act upon facts within his own knowledge or on those communicated to him by a responsible person. . . ." (citation omitted)

The foregoing considered, the Motion to Suppress of Defendant Law as to the initial stop of the van is DENIED.

## III

## SEARCH OF THE PERSON OF DEFENDANT LAW

Given the conclusion reached above that the initial stop of the van was lawful, it is necessary to now resolve the issue of the propriety of the body search of the Defendant Law which followed thereafter.

Upon bringing his van to a stop on the apron of a closed gasoline station, Defendant Law exited the vehicle, left the driver's door open, and walked to the rear thereof where Sgt. Hurt had stopped his marked unit. Almost simultaneously with the aforesaid event, Officer Sims arrived upon the scene and conducted a pat down search of Defendant Law, which search revealed the presence of a revolver in a shoulder holster.

It is now axiomatic that:

". . . when a person is lawfully arrested the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. . . . This right to search and seize without a search warrant extends to things under the accused's immediate control. . . . The rule allowing contemporaneous searches is justified by the need to seize weapons which might be used to assault an officer or effect escape . . . which might easily happen where the weapon . . . is on the accused's person or under his immediate control. . . ." (citations omitted)

*Preston v. U.S.*, 84 S.Ct. 881, 883, 376 U.S. 364, 367 (1964).

Given the facts in the record now before the Court, it is fair to conclude that the search of Defendant Law is legal either as being made pursuant to *Terry v. Ohio, supra*, F.S. 901.151 or as a search incident to a lawful arrest.

Upon the foregoing analysis, the Motion to Suppress the firearm is DENIED.

## IV
## SEARCH OF THE VAN

For the reasons set out in Part I of this Order, Defendant Cornelius is without "standing" to challenge any aspect of the search of the van; her Motion to Suppress the fruits of the van search is, therefor, DENIED.

As discussed in Part II of this Order, the initial stop of the van was justified in law.

If, then, the stop of the van was lawful, did the police need the authority of a search warrant before they could investigate the interior thereof?

In *State v. Miller*, 267 So.2d 352 (Fla. 4DCA, 1972), the law relating to the detention and warrantless search of motor vehicles was fairly summarized. Quoting from *Cameron v. State*, 112 So.2d 864, 873 (Fla. 1DCA, 1959), the *Miller* court, *supra* at 353, said:

> "As a necessary and proper evolution of the living law to meet the changing needs of society, the modern trend of authorities is to narrow the concept of immunity against searches and seizures when it involves a motor vehicle used as an aid to the commission of crimes, whether in transporting the criminal or the fruit of the crime. This trend is reflected by the acceptance of less compelling facts and circumstances than formerly required to constitute 'probable cause' for an arrest of the driver or occupant, or for search of the vehicle and seizure of the property found therein without supporting warrants."

The *Miller* court, *supra*, also concluded that the probable cause requirement is satisfied, insofar as a vehicle is concerned, when there is a lawful dentention and the search is incident thereto. This latter concept is now solidly engrafted in the law of vehicular search and seizure. *State v. Pryor*, FLW 726 (Fla. 4DCA, 3/18/83) and cases cited therein.

Concluding, as one must given the foregoing law, that the van could have been searched without a warrant, the Court is of the opinion that the action of the police in obtaining a warrant to search the van was an unnecessary, superfluous act. Just as surplusage, or invalid allegations, in an affidavit for a search warrant may be stricken when an evaluation of the validity of the warrant is made, *Antone v. State*, 382, So.2d 1206 (Fla. 1980); *State v. Ward*, 407 So.2d 353 (Fla. 2DCA, 1981), so may the court judicially excise superfluous police action in obtaining a warrant.

This Court, therefore, shall not pass upon the validity of the search warrant issued for the van since to do so would render no service to either the bench or the bar.

The motion of Defendant Law to suppress the evidence seized from the van is DENIED.

## V

## SEARCH OF THE HOUSE

It has been stipulated by counsel for all parties, and the court so finds, that both defendants herein are vested with a legitimate expectation of privacy in the residence which was searched and, therefore, each have "standing" to challenge the admissibility of any evidence seized pursuant to any search thereof.

Statutes authorizing search warrants are to be strictly construed. 15 Fla.Jur 2d 108, Cr. Law §523. Such judicial philosophy finds support both in logic and law when fair consideration is given to the circumstances precipitating the birth of our nation. The duty of a magistrate before issuing a warrant is three-fold, i.e., he must evaluate:

1. the truthfulness and integrity of the witness before him,

2. the realiability of the source of hearsay information, if any,

3. the adequacy of the factual premises furnished from all sources to support the validity of the conclusion.

*State v. Wolf*, 310 So.2d 729 (Fla. 1975); *Blair v. State*, 406 So.2d 1103 (Fla. 1981); *State v. Sandini*, 395 So.2d 1178 (Fla. 4DCA, 1981).

Defendants' Motion to Suppress the evidence seized from the residence is predicated, essentially, upon two alleged errors in the affidavit submitted to Judge Ferris, to wit:

1. inclusion of hearsay without establishing the realiability thereof,

2. inclusion of false information (representation that suspect marijuana had been found inside the van).

It is clear from the record before this Court that no search of the van had occurred when the requests for the warrants were presented to Judge Ferris and, therefore, the statement in reference to discovering suspect marijuana in the van was erroneous. There is not, however, sufficient evidence before the court to warrant a finding that defendants met the burden of proof required by *Frank v. Delaware*, 438 U.S. 154,

98 S.Ct. 2674 (1977) to establish that there was a false statement knowingly and intentionally made, or made with a reckless disregard for the truth, upon which reliance was placed by the magistrate for a finding of probable cause resulting in the issuance of the search warrant. For failure to carry the burden of proof required by *Franks, supra*, the Motion to Suppress as regards the house should have been denied but, as will be seen below, there is a more basic reason for granting the motion.

Examination of the affidavit of Officer Shirley, as the same was submitted to Judge Ferris on December 30, 1982, fails to contain a single reference to:

1. the date when Officer Shirley received her information from the confidential informant,

2. what date the ". . . early A.M. drop . . ." of marijuana would occur,

3. what date she observed the black male wearing a "bright, bright red jacket" exit the residence and place a grey plastic bag in the van,

4. what date the black female and black male, with the aforementioned cargo, were stopped by the marked police unit.

The issue now under review was squarely before the Second District Court of Appeal in *State v. Mills*, 267 So.2d 44 (1972). The *Mills* Court, *supra*, affirmed the granting of a motion to suppress and quoted from the trial court's order, viz:

"The Court further finds that the Affidavit and warrant fail to show any facts or circumstances sufficient to show when the *alleged* informant learned of the alleged illegal activities at the premises . . . so that from the Affidavit and warrant the Court is wholly unable to determine when said alleged illegal activities were observed at the premises." (emphasis added in original opinion)

The State attempted to cure the foregoing error by presenting Officer Shirley who testified that she told Judge Ferris, under oath, that the events recited in her affidavit, and her observations, had occurred within 24 hours prior to her appearance before him. In *Orr v. State*, 382 So.2d, 860 (Fla. 1DCA, 1980) just such a procedure was disallowed.

By supplemental memorandum, the State has called to the attention of the court, the cases of *State v. Bishop*, 395 So.2d 238 (Fla. 1DCA,

1981), *Borras v. State*, 229 So.2d, 244 (Fla. 1969) and *Merit v. State*, 342 So.2d 993 (Fla. 4DCA, 1977) as being cases which solve the problem of the missing date *sub judice*. Close analyses, however, causes this court to believe that the State's reliance upon the aforesaid cases is misplaced.

In the Affidavit executed by Officer Shirley in support of the Search Warrant for the residence, *sub judice*, she related that her confidential informant (at some unspecified date in the past) had advised her that (at some unspecified date in the future) defendant would attempt to make a drop of marijuana (to some unnamed party). The Affidavit contains no information even remotely suggesting that Defendant Law resided, possessed or controlled the premises sought to be searched nor did it give any reason why it should be suspected that marijuana might be found in the subject premises.

When one eliminates from the Affidavit the statement that suspect marijuana had been found in the van driven by Defendant Law (see discussion, *supra*), one is left with an Affidavit—even if properly dated—which recites no facts to support Officer Shirley's conclusion that ". . . the laws of Florida are being violated, TO WIT: Violation of Chapter 893, Controlled Dangerous Substance as amended and revised . . ." much less that *any* illegal property may be found upon the premises sought to be searched.

Turning to the cases submitted by the State in its supplemental memorandum of law, it becomes clear why none of them are controlling in this particular case. In each of the cases cited in the supplemental memorandum, the Affidavit contained information deemed sufficient to cure any alleged "staleness".

The affidavit in *Borras v. State*, 229 So.2d 244, 246 (Fla. 1969) appeal dismissed 400 U.S. 808, 91 S.Ct. 70, 27 L.Ed 2d 37 (1970) was deemed sufficient because it:

". . . uses the present tense alleging a violation which was continuing right up to the time the warrant issued."
(emphasis added)

The Fourth District Court of Appeal in *Merit v. State*, 342 So.2d 993, 995 (1977), felt constrained to follow *Borras, supra.* Because the Court is unable to discern from the reported opinions what was actually contained in the affidavits there under review, it cannot be said that the rulings of either *Merit* or *Borras*, both *supra*, are here controlling. However, based upon the analyses of these cases by the Second District Court of Appeal in *King v. State, infra*, this court is of the opinion that the instant affidavit is doomed to an intellectual death.

The First District Court of Appeal, in *State v. Bishop*, 395 So.2d 238 (Fla. 1DCA, 1981), found itself within the *Borras, supra*, rule because the affidavit specifically alleged that (1) a controlled buy of cocaine and methaqualone had been made within the premises sought to be searched ". . . within the past ten days . . ." and (2) that the affiant believed that cocaine and methaqualone ". . . are now being kept and distributed within the abovedescribed premises. . . ." It was the opinion of the *Bishop* court, *supra*, that the allegation that an identifiable criminal act had occurred within the subject premises within a determinable time, and the present tense allegation as to the continuance of such activity within the subject premises, resolved any claim of staleness.

More appropriate to a proper resolution of the matter now before the court is *King v. State*, 410 So.2d 586, (Fla. 2DCA, 1982). In *King*, the court was presented with an affidavit from a police officer that averred at page 586:

> "[Y]our affiant's reason for his belief is that *within the last six days he met with* a confidential and reliable informant who advised him that inside 118 Lake Avenue, Apt. 19, Largo, Pinellas County, Florida, he observed . . . what he believed to be marijuana . . . ." (emphasis in original)

The *King* court, supra, at page 587, made a cogent observation as to when affidavits are approved or disapproved when reliance is placed upon the phrase "within the" named period, to wit:

> The courts of this state have, sometimes, upheld and have on other occasions disapproved the use of the phrase "within the" such and such period. The courts approve its use if the information provides probable cause by indicating the informant made an actual purchase or other exchange or actually observed illegal acts within a certain stated period which is not remote to the date of application for the search warrant. *State v. Schwarzbauer*, 342 So.2d 1085 (Fla. 2d DCA 1977); *State v. Bishop*, 395 So.2d 238 (Fla. 1st DCA 1981). However, where affidavits to search warrants indicate merely that the police and the informant met or conferred within a certain given period of time, *without noting when the informant observed the illegal act*, then the courts have disapproved search warrants generally on the theory that the affidavit fails to provide the issuing magistrate probable cause to believe the crime occurred and is continuing to occur in the premises to be searched at the time of the issuance of the search warrant. *State v. Mills*, 267 So.2d 44 (Fla. 2d DCA 1971); *Orr v. State*, 382 So.2d 860 (Fla. 1st DCA 1980). (emphasis added)

This court is of the opinion, therefore, that the instant case is not controlled by *Bishop, Borras* or *Merit*, all *supra*, but rather by *King*, supra.

Finally, as to the house search, a pronouncement of Judge Walden in *State v. Scatti*, Vol. 8, No. 14, FLW 919 (Fla. 4th DCA, 3/30/83) seals the lid back upon this Pandora's box viz:

> We first consider the search of the dwelling based upon a search warrant. Employing the standards found in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), we find that the content of the affidavit for the search warrant was insufficient to establish probable cause. The affidavit recited the hearsay statements of an identified informer who pinpointed defendant as a perpetrator in a burglary and as still in possession of the burglary proceeds. However, the affidavit offers no basis of personal knowledge on the part of the informer to explain the source of his information. The informer does not assert his personal participation in the burglary; nor that he witnessed the burglary; nor that he observed defendant in possession of stolen goods. Without this personal knowledge, the informant lacks Aguilar credibility. Nor does the informer supply sufficient details of facts and circumstances to render the information reliable under Aguilar. The surveillance conducted immediately precedent to this high speed chase suggested nothing incriminating nor even suspicious to corroborate the informer's information, nor was there any other fact offered in the affidavit to slightly corroborate the hearsay. Thus, the application of the Spinelli test also renders this affidavit as an inadequate statement of probable cause. The affidavit being deficient, it therefore follows that the warrant was deficient, that the search pursuant thereto was unreasonable and that the evidence obtained thereby must be suppressed. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Even a casual reading of the Affidavit now under examination reveals it to be possessed of all the cancerous errors found to exist in the Affidavit reviewed in *Scatti, supra*. It is with no great pleasure that this court must preside over a Fourth Amendment Coroner's Inquest, but having been charged with the constitutional duty to do so, there is hereby returned a verdict that the death of the search warrant for the residence was due to a complete failure of the Affidavit to state sufficient lawful facts to authorize the issuance of the search warrant in the first instance.

34

The motion of Defendants Law and Cornelius to suppress *all* evidence seized from 1008 N.W. 11th Court, Ft. Lauderdale, Florida, is hereby GRANTED.

## VI

## NONCOMPLIANCE WITH F.R.Cr.P. 3.190 (h) (2) AND (3)

The State has raised, by memorandum of law and not by motion, the issue of whether the various Motions to Suppress sufficiently complied with F.R.Cr.P. 3.190(h) (2) and (3), asserting, *inter alia*, that they failed to state with particularity the evidence sought to be suppressed nor did they adequately describe the facts upon which the motions were based.

As to the Motion to Suppress the gun taken from the person of Defendant Law, there was only one firearm removed from him. The description of both the facts and firearm are found to be adequate.

As to the motions designed to suppress evidence seized from the van and the house, each motion referred to the items listed in the inventory and return filed by Officer Range or Officer Shirley, as the case may be. Since the State is not prejudiced in any fashion by having to examine the seminal documents upon which they rely herein to prove guilt, the court finds adequate compliance with the evidence description requirement.

As to the facts upon which Defendants seek suppression of the fruits of the van and house search, the Court finds the State's complaint as to lack of specificity to be arguable. By a slim margin—and the court does mean *slim*—the factual allegations made in the Motions to Suppress ultimately pass muster sufficiently to warrant the evidentiary hearing conducted by the court. It would have been easy to dismiss the house and van Motions to Suppress, but the motion addressed to the firearm taken from Defendant Law required an evidentiary hearing. The conservation of judicial resources more than adequately justified hearing all motions on their merits at one hearing.

The State's suggestion that the Motions to Suppress are procedurally inadequate is REJECTED.

## CONCLUSION

1.  The Motions to Suppress filed by both Defendants as to the van are DENIED.

2.  The Motion to Suppress filed by Defendant Law as to his person is DENIED.

3. The Motions to Suppress filed by both Defendants as to 1008 N.W. 11th Court, Ft. Lauderdale, are GRANTED.

4. The State's Suggestion of Procedural Insufficiency as to the above-described Motions to Suppress is DENIED.