437 So.2d 133 (1983)
Freddie Lee WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 61549.
Supreme Court of Florida.
June 23, 1983.
Rehearing Denied September 29, 1983.
Charles A. Tabscott, Orlando, for appellant.
Jim Smith, Atty. Gen. and Richard W. Prospect, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Freddie Lee Williams appeals his conviction of first-degree murder and sentence of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and we affirm both the conviction and sentence.
The victim was Mary Robinson, Williams' longtime girlfriend. On the night of the murder, the victim went to her sister's house and there received a number of upsetting telephone calls from Williams. After these calls, the victim and her sister *134 went to jai alai and returned to the Williams-Robinson apartment around eleven o'clock. The sister left; Williams soon arrived and shortly thereafter called the sister to report that something had happened to the victim. When the sister returned, the police were already present.
Earlier that evening, Williams had borrowed a neighbor's handgun, telling him that he was going gambling. He testified that he left the gun on the dresser in a bedroom at home when he went out and that upon his return, the victim staggered toward him, already shot. He called the police and an ambulance. He also testified he did not want the police to find the weapon in his possession since he was on parole; he thus went into the bedroom and took the pistol from the dresser and threw it outside under a bush.
The state's case revolved around longstanding domestic arguments between Williams and the victim and in particular Williams' anger over the victim's supposedly taking a shower that night, a sign he took to mean that the victim was cleaning up after being with a boyfriend.
After the conviction, the jury voted to recommend the death penalty. Upon finding two aggravating circumstances and nothing in mitigation, the trial court imposed a sentence of death.
Williams argues twelve issues on this appeal. We discuss only three; the remaining have been carefully considered and are found to be devoid of merit.
Williams first argues that the evidence is insufficient to support a verdict of first-degree murder. He asserts that the element that was not proved to the satisfaction of sufficiency of evidence standards was premeditation. He claims this is significant given the fact that there was no evidence of, nor did the prosecution argue, felony murder.
The proper role that this Court plays in capital cases has been enunciated in Tibbs v. State, 397 So.2d 1120 (Fla. 1981), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). There we said that
an appellate court should not retry a case or reweigh conflicting evidence submitted to a jury or other trier of fact. Rather, the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment.
397 So.2d at 1123 (footnotes omitted). See also Spinkellink v. State, 313 So.2d 666 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). It is our function, then, to see if there is substantial, competent evidence to support this verdict. We find there is.
Resolving all conflicts in favor of the jury verdict, we find that the record is sufficient to find premeditation beyond a reasonable doubt. The jury was told that the telephone conversations between the victim and Williams were upsetting to the victim. There was evidence of a prior stormy relationship between the victim and Williams. And, most significantly, the jury was told that Williams borrowed a pistol that evening prior to the shooting and then complained to a friend that the victim was washing up after being with another man. We have stated elsewhere that
A premeditated design to effect the death of a human being is a fully formed and conscious purpose to take human life, formed upon reflection and deliberation, entertained in the mind before and at the time of the homicide. The law does not prescribe the precise period of time which must elapse between the formation of and the execution of the intent to take human life in order to render the design a premeditated one; it may exist only a few moments and yet be premeditated. If the design to take human life was formed a sufficient length of time before its execution to admit of some reflection and deliberation on the part of the party entertaining it, and the party at the time of the execution of the intent was fully conscious of a settled and fixed purpose to take the life of a human being, and of *135 the consequence of carrying such purpose into execution, the intent or design would be premeditated within the meaning of the law although the execution followed closely upon formation of the intent.
McCutchen v. State, 96 So.2d 152, 153 (Fla. 1957). We think that under the facts of the instant case, there clearly was sufficient time before the killing for Williams to have formed a premeditated design, and the borrowing of the gun and the statements made by Williams about his anger at the victim cleaning up bear this out.
This Court is not unmindful that "where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977). See also Jaramillo v. State, 417 So.2d 257 (Fla. 1982). At trial, the sole theory of defense was that the crime was committed by an unknown assailant. According to Williams, the victim was already wounded when he entered the apartment and he claimed he tried to help her. The state established by ballistics tests that the pistol Williams had borrowed was the murder weapon. The physical evidence presented at trial shows that Williams' story about an unknown murderer as well as the circumstances surrounding the disposal of the gun is clearly unreasonable. Williams did not present any reasonable hypothesis of innocence. The jury could properly conclude that Williams was not telling the truth and, given the evidence, that Williams' act represented premeditated murder.
Defense counsel in closing argument suggested that the evidence showed, at most, second-degree murder and that this killing could have been a domestic heat-of-passion murder. The jury could properly find otherwise based on what the evidence did not show. There was no evidence of any struggle or commotion or any facts which might suggest a confrontation of any physical or violent nature between the victim and Williams. Given the location of the victim crouching on the corner of the bed when she was shot, the presence of toothpaste and a toothbrush on the bed, and the fact that the gunshot wound was not suffered at close range, the jury could have found that Williams confronted the victim while she was brushing her teeth causing her to move to the bedroom. He then shot her once in the side of the neck while her head was turned away from him and while her arm was raised in a defensive posture. The fact that the victim was only shot once is not dispositive of lack of premeditation since, in this case, the wound was in the neck region and immediately caused massive and visible loss of spurting blood. While it was within the province of the jury to find second-degree murder in this case, despite appellant's claim of innocence, we cannot say that the evidence, including the physical facts, is such that the jury was precluded, as a matter of law, from finding first-degree murder.
We hold, then, that the jury could properly find the element of premeditation in this murder and that there was both substantial and competent evidence to support this.
Williams next argues that the trial court erred in refusing to give his instruction on circumstantial evidence. He relies on McCall v. State, 116 Fla. 179, 156 So. 325 (1934), overruled, State v. Anderson, 270 So.2d 353 (Fla. 1972), as stated in Miller v. State, 403 So.2d 1014 (Fla. 5th DCA 1981), petition denied, 412 So.2d 468 (Fla. 1982); Leavine v. State, 109 Fla. 447, 147 So. 897 (1933), overruled, State v. Anderson, 270 So.2d 353 (Fla. 1972), as stated in Miller v. State, 403 So.2d 1014 (Fla. 5th DCA 1981), petition denied, 412 So.2d 468 (Fla. 1982); Perez v. State, 371 So.2d 714 (Fla. 2d DCA 1979); Lee v. State, 362 So.2d 692 (Fla. 4th DCA 1978); and Newsome v. State, 355 So.2d 483 (Fla. 2d DCA 1978), disagreed with, Miller v. State, 403 So.2d 1014 (Fla. 5th DCA 1981), petition denied, 412 So.2d 468 (Fla. 1982), for the proposition that an instruction on circumstantial evidence is required where the prosecution relies solely on circumstantial evidence to prove an essential element of the offense charged. We *136 agree, but we also find that those cases precede our recent opinion revising the standard jury instructions. See In re Standard Jury Instructions in Criminal Cases, 431 So.2d 594 (Fla. 1981). There we explicitly stated that the circumstantial evidence instruction is now unnecessary because the instructions on reasonable doubt and burden of proof are sufficient to properly instruct the jury and a separate instruction solely on circumstantial evidence would be duplicative.
Williams argues that the standard jury instructions are flexible guidelines and not inflexible rules and that the trial court still should have given the "old" circumstantial evidence instruction since circumstantial evidence was so prominent in this case. We appreciated this possibility when we noted in our jury instruction revision opinion that "[t]he elimination of the current standard instruction on circumstantial evidence does not totally prohibit such an instruction if a trial judge, in his or her discretion, feels that such is necessary under the peculiar facts of a specific case." Id. at 595. In the case sub judice, the trial court in its discretion felt the extra instruction was unnecessary. We will not disturb the action of the lower court in the exercise of its judicial discretion unless palpable abuse of this discretion is clearly shown from the record. Williams has not shown the trial judge's action to be abusive of his discretion.
Williams' final point relates to the sentence of death. He argues that the death sentence is unwarranted when this case is compared to similar cases and especially to those cases where the sentence of death is overturned and a life sentence mandated. He also argues that the trial court erred by doubling the aggravating circumstances.
The trial court's findings of fact included the following:
There are nine aggravating circumstances set out in Florida Statutes 921.41(5) (sic).
A review of the aggravating circumstances prescribed by statute shows that there are two aggravating circumstances present. These are Subsections (a) and (b) and are as follows:
(a) The capital felony was committed by a person under sentence of imprisonment.
(b) The defendant was previously convicted of another capital felony or [of] a felony involving the use of (sic) threat or (sic) violence to the person.
Regarding aggravating circumstance (a), the Defendant was under sentence of imprisonment when he committed the murder for which he was convicted in this case. In Count Two of Orange County Case Number CR74-3442, the Defendant pled guilty to possession of a firearm by a convicted felon, and on June 6, 1975 was sentenced to 10 years imprisonment. That at the time the murder in this case was committed the Defendant was still on parole. A person on parole is still under sentence of imprisonment. Aldridge v. State of Florida, 351 So.2d 942.
Regarding aggravating circumstance (b), the Defendant had been previously convicted of a felony involving the use or threat of violence to another. In Orange County Case Number 71-1551 the Defendant pled guilty to aggravated assault and was sentenced to 5 years imprisonment. In Count One of Orange County Case Number CR74-3442 the Defendant pled guilty to aggravated assault. In both of these aggravated assault cases Freddie Lee Williams shot his victims.
The other aggravating circumstances prescribed by statute are not present.
... .
The Court has carefully considered the mitigating circumstances prescribed by Statute and finds none to be present.
... .
At the penalty phase trial the defendant presented evidence from relatives and friends that he is a good person and that he was kind to them. This evidence does not rise to a non-statutory mitigating circumstance which could offset the aggravating circumstances.
Williams argues that it is a duty of this Court to make a proportionality determination *137 and decide how this case compares with other cases. We agree. Brown v. Wainwright, 392 So.2d 1327 (Fla.), cert. denied, 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981). "[W]e compare the case under review with all past capital cases to determine whether or not the punishment is too great." 392 So.2d at 1331. This we have done. We conclude that the sentence imposed here is not comparatively inappropriate and thus is proper.
Williams cites Phippen v. State, 389 So.2d 991 (Fla. 1980); Brown v. State, 367 So.2d 616 (Fla. 1979); McCaskill v. State, 344 So.2d 1276 (Fla. 1977); Chambers v. State, 339 So.2d 204 (Fla. 1976); and Tedder v. State, 322 So.2d 908 (Fla. 1975), as decisions wherein this Court has reduced a death sentence to one of life imprisonment under circumstances seemingly more serious than those in the present case. These cases are not only factually inapposite, but each was a jury override, a situation where the trial judge pronounced a sentence of death after the jury by majority vote has recommended a life sentence. Factors and considerations were thus present in those cited cases that are absent in the one sub judice.
Likewise, Williams cites Blair v. State, 406 So.2d 1103 (Fla. 1981); Kampff v. State, 371 So.2d 1007 (Fla. 1979); and Halliwell v. State, 323 So.2d 557 (Fla. 1975), as examples where this Court has reduced a sentence of death to one of life even after the jury recommended death. These cases are inapposite, however. In Blair, the trial judge improperly included several aggravating factors; since there was a mitigating factor, this Court vacated the death sentence. In Kampff, all of the trial court's findings of aggravating factors were found to be in error; since there were at least two mitigating factors, the sentence of death was improper. Finally, in Halliwell, the sole aggravating circumstance was found not to apply; the presence of numerous mitigating factors warranted the reduction of the sentence from death to life imprisonment. While all three of these cases involved a domestic dispute, as does the instant case, the rationale for the overturning of the death sentences in each was error in the aggravation/mitigation equation and not the fact of the domestic dispute. Since we hold, immediately below, that there was no error in the trial court's findings of the aggravating factors, Williams' proportionality argument fails.
Finally, Williams asserts that the trial court erred by doubling the aggravating circumstances. We disagree. The trial court properly found that Williams was under sentence of imprisonment because of the 1975 Orange County conviction and 10-year sentence. Williams was on parole at the time of this homicide; an actual incarceration is not necessary. Aldridge v. State, 351 So.2d 942 (Fla. 1977), cert. denied, 439 U.S. 882, 99 S.Ct. 220, 58 L.Ed.2d 194 (1978). This is satisfactory proof of section 921.141(5)(a), Florida Statutes (1979). Similarly, section 921.141(5)(b) was proven by either the 1972 conviction for aggravated assault or by the 1975 aggravated assault conviction. There was no doubling of the aggravating circumstances in this case.
Appellant, Freddie Lee Williams, was properly convicted of first-degree murder. The jury recommended death. The trial court correctly found two aggravating circumstances and nothing in mitigation. We have compared this case to similar cases and have concluded the death sentence is appropriate. Therefore, the judgment of guilty of first-degree murder and the sentence of death are affirmed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, McDONALD and EHRLICH, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion.
OVERTON, Justice, concurring in part, dissenting in part.
I concur with the conviction. I dissent from the imposition of the death sentence. In my judgment, proportionate review with other cases requires a reduction of the sentence to life imprisonment without parole for twenty-five years. I disagree with the majority opinion that this case is factually *138 inapposite from Blair v. State, 406 So.2d 1103 (Fla. 1981); Phippen v. State, 389 So.2d 991 (Fla. 1980); Kampff v. State, 371 So.2d 1007 (Fla. 1979); Brown v. State, 367 So.2d 616 (Fla. 1979); McCaskill v. State, 344 So.2d 1276 (Fla. 1977); Chambers v. State, 339 So.2d 204 (Fla. 1976); Halliwell v. State, 323 So.2d 557 (Fla. 1975); and Tedder v. State, 322 So.2d 908 (Fla. 1975). Those cases must be used to properly evaluate the proportionality of the death sentence in this case.